**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN (JACKSON) DIVISION**

DERRIQUE MARSHALL                                                              PLAINTIFF

V.                                                   CIVIL ACTION NO.  3:12CV600 HTW-LRA

CAROLYN W.  COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                      DEFENDANT

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Derrique Marshall, proceeding *pro se*, appeals the final decision denying his

application for child insurance benefits and Supplemental Security Income ("SSI").  The

Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final

decision of the Administrative Law Judge.  Having carefully considered the hearing

transcript, the medical records in evidence, and all the applicable law, the undersigned

recommends that the decision be affirmed for the reasons that follow.

**Factual and Procedural Background**

On February 8, 2006, Marshall filed *pro se* applications alleging he became

disabled on that same date due to depression and a learning disability.  He has a ninth

grade education and was approximately 20 years old at the time of filing, with previous

work experience as a material-handler, automobile-detailer, and fast-food worker.  On

October 25, 2007, Administrative Law Judge Willie L. Rose issued an unfavorable

decision and Marshall appealed the denial.  Although his request for review was not timely

filed, the Appeals Council found good cause for the late filing and granted Marshall's

request for review.  On November 19, 2010, the Appeals Council vacated the ALJ's decision and remanded the case with instructions to obtain additional evidence concerning Plaintiff's depression and possible learning disorder; and, if warranted, the following: (1) "a consultative psychological examination with psychological testing and medical source statement about what the claimant can still do despite the impairments;" and, (2) vocational expert testimony "to clarify the effect of the assessed limitations on his occupational base."  The ALJ was also instructed to further evaluate the Plaintiff's mental impairments in accordance with 20 C.F.R. § §1520(a) and 416.920(a), and to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations."  In compliance with the remand order, ALJ Rose obtained and considered the additional evidence, including additional medical records submitted by Plaintiff, who was now represented by counsel.  A second unfavorable decision was issued on September 13, 2011, and Plaintiff appealed the denial.  The Appeals Council denied Plaintiff's second request for review and he now appeals that decision *pro se*.[1]

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  In accordance with 20 C.F.R. § §1520(a) and 416.920(a),

---

[1]ECF No. 11, pp. 18-45.

at step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff has not

engaged in substantial gainful activity since his alleged onset date.  At steps two and three,

the ALJ found that although Plaintiff's borderline intelligence and depressive disorders

were severe, they did not singly or in combination, meet or medically equal any listing. At

step four, the ALJ found that Plaintiff could perform his past relevant work as a material-

handler, automobile-detailer, and fast-food worker.  Alternatively, the ALJ found that

Plaintiff also had the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following
> non-exertional limitations:  he can understand and remember simple
> instructions and carry out simple tasks. He can interact with supervisors and
> co-workers on an occasional basis without interruption.[3]

Based on vocational expert testimony at step five, the ALJ concluded that given Plaintiff's

age, education, work experience, and residual functional capacity, he could perform work

as a hand-packager in addition to his past work.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1)

whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)

whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d

---

[2]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3]ECF No. 11, p. 24.

726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)).

Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as

adequate to support a conclusion; it must be more than a scintilla, but it need not be a

preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v.*

*Sullivan*, 954 F.2d at 295 (5th Cir. 1992)).  This Court may not re-weigh the evidence, try

the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence

that preponderates against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th

Cir. 1994).

### Discussion

Plaintiff does not assert any specific assignments of error on appeal, but cites to

various portions of the record to support his disability claims.  Liberally construed,

Plaintiff essentially maintains that he is entitled to disability benefits because he gets

depressed and has a learning disability which makes it difficult for him to comprehend or

understand things.  As evidence in support, he states that he failed three grades while in

school and was unsuccessful in his attempts to obtain a GED.  He also asserts that he

requires constant reminders and needs assistance to make decisions.  In addition to these

mental impairments, Plaintiff maintains that he has difficulty walking and standing due to

a callous buildup and a clubfoot.[4]  The undersigned, having carefully considered each of

these and other arguments raised by Plaintiff on appeal, finds substantial evidence

---

[4]ECF Nos. 9, pp. 1-23; 11, pp. 323-339; 17, pp. 1-10.

supports the denial of benefits in this case.

Applying the severity standards set forth in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985) and 20 C.F.R. § 416.920(c), the ALJ concluded that Plaintiff's borderline intelligence and depressive disorders were his only severe impairments.[5]  Although Plaintiff testified that he experiences pain when standing and walking, the objective medical evidence did not establish any severe physical impairments.  Plaintiff acknowledges that he underwent corrective foot surgery when he was an infant, and while he maintains that his legs are now uneven, the record is devoid of any medical treatment for this or any other physical impairment.  The mere presence of some impairment is insufficient to establish a severe impairment or disability.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  "An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality . . . that has no more than a minimal effect on the claimant's ability to do basic work activities."  *Brunson v. Astrue*, 387 F.App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101).

In addition to *Stone*, the ALJ applied the psychiatric review technique required by 20 C.F.R. § 1520a(d)(1), and concluded that Plaintiff's depression produced only mild

---

[5]The ALJ did not specifically reference *Stone* in his opinion.  But since *Stone*, the Fifth Circuit has cautioned lower courts not to "wholesale remand" all severity cases for failing to cite *Stone*.  *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).  The critical issue at step two is whether the ALJ applied the correct legal standard, not whether he recited the "magic words." *Id.*

limitations in his daily activities and social functioning, and moderate limitations in his concentration, persistence, and pace with no episodes of decompensation of extended duration. 20 C.F.R. § 1520(a). These findings are substantially supported by consultive psychological examinations, medical source statements, Plaintiff's testimony, and his treatment records.

In a consultative psychiatric examination performed in April 2006, Dr. Buren Smith found no evidence that Plaintiff had functional limitations secondary to any psychiatric condition. During the examination, Plaintiff advised Dr. Smith that he had a tenth grade education and was enrolled in regular classes while in school. Plaintiff's only reported psychiatric treatment up to that point was a one-year Ritalin prescription when he was approximately five-years old for attention deficit hyperactivity disorder. He had not received any formal psychiatric treatment or medications since that time, and had no psychiatric complaints during the examination. Plaintiff also reported that his daily activities included visiting with friends, watching television, and playing basketball; he also cleans, drives a car, and attends to his personal needs.[6]

On examination, Dr. Smith observed, *inter alia*, that Plaintiff's psychomotor activity was normal; he was oriented as to time, place, person and situation, and showed no overt evidence of anxiety. He displayed a normal affect and mood; no evidence of psychotic thinking or behavior; mild problems with concentration and adequate judgment

---

[6]ECF No. 11, pp. 233-236.

and fair insight, though he appeared to be functioning in the low average range of

intelligence.  Dr. Smith additionally found as follows:

> From a psychiatric standpoint, he should be able to perform routine,
> repetitive tasks and interact with co-workers and receive supervision and
> maintain concentration and attention in a job setting.  He is considered
> competent to handle his finances, and the prognosis would be for his
> condition remaining of about the same degree over the next twelve months.
> He is doing a good job with personal hygiene and grooming activities and
> can do domestic chores and has good interpersonal communication and
> social skills.  He has adequate leisure activities.  He is an appropriate
> candidate for referral to Vocational Rehabilitation for help with job
> placement, and particularly should be trying to get his GED, and I have
> encouraged him to do this.[7]

Based on this evidence, psychological consultant, Dr. Amy Hudson, concluded that

Plaintiff was mildly limited in all functional areas with no episodes of decompensation in

May 2006.  She expressly found that Plaintiff could understand and remember simple

instructions and carry out simple tasks; concentrate and attend for two-hour periods;

interact with supervisors "at a very basic level;" and, adequately adapt to complete a

normal work-week without excessive interruption from psychologically-based symptoms.[8]

Medical records following these early evaluations reflect that Plaintiff received

sporadic mental health treatment at Hinds Behavioral Health Services from May 2007

through March 2011.  In his initial assessment, Plaintiff reported depression, low self-

esteem, poor concentration, anger outbursts, and a history of marijuana and alcohol abuse.

He was diagnosed with major depressive disorder and prescribed medication.  Within two

---

[7]*Id* at. 235.

[8]*Id*. at 251-253.

weeks, the treating psychiatrist determined that Plaintiff's depression was in remission. He was alert and oriented; his attention, concentration, and memory were all normal; and, his insight and judgment were both fair. Plaintiff sought no further mental health treatment until December 2010, over three years later. He advised that he had been working the past four months, but was experiencing anxiety, depression, and difficulty sleeping. The examining psychiatrist noted that Plaintiff had limited intellectual capabilities, but was alert and oriented with no evidence of confusion. Plaintiff was not seen again until March 2011. He reported mood swings and sleep disturbance, but was "oriented in all spheres without any evidence of confusion." The examiner noted that he had a limited attention, awareness, and insight. He also had a history of poor judgment, but appeared to comprehend everything. Plaintiff was prescribed sleeping medication and instructed to follow-up in 4-6 weeks, but the records do not indicate that he ever returned.[9]

The only other medical evidence of record are the medical source statements and consultative psychological examinations conducted pursuant to the Appeals Council's order of remand. Although Plaintiff cites to portions of this evidence to support a mental retardation claim, the ALJ properly concluded that his mental impairments did not satisfy the criteria for Listing 12.05.

To meet the requirements of Listing 12.05, Plaintiff must show that his condition satisfies both the diagnostic description of mental retardation outlined in the introductory

---

[9]ECF No. 11, pp. 270-306.

paragraph and one of the four (4) severity criteria enumerated in 12.05 (A), (B), (C) or

(D).  20 C.F.R. pt. 404, subpt. P, app. 1 §12.05.  The diagnostic description defines mental

retardation as "significantly subaverage general intellectual functioning with deficits in

adaptive functioning initially manifested during the developmental period; i.e., the

evidence demonstrates or supports onset of the impairment before age 22." *Id*.  One of the

following criteria must also be met:

> A.    Mental incapacity evidenced by dependence upon others for personal
> needs (e.g., toileting, eating, dressing, or bathing) and inability to
> follow directions, such that the use of standardized measures of
> intellectual functioning is precluded;
>
> OR
>
> B.    A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing an additional and
> significant work-related limitation of function;
>
> OR
>
> D.    A valid verbal, performance, or full scale IQ of 60 through 70,
> resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration,
> persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended
> duration.

*Id*.  If a disability claimant's condition meets or equals the "listed" impairments, he or she

is conclusively presumed to be disabled.  Plaintiff's intellectual functioning was not so

severe that it met or medically equaled Listing 12.05 in this case.

Intelligence testing obtained by psychological consultant, Dr. Jerry Rowzee, in April 2011 indicated that Plaintiff had a Verbal I.Q. score of 79, Full Scale I.Q. score of 76, and Performance I.Q. score of 77.  While Dr. Rowzee opined that evidence suggested that Plaintiff had mild retardation in reading and spelling and adaptive behavior, he concluded that his I.Q. scores placed him in the borderline range of intellectual functioning.  Intelligence testing conducted in August 2011 by psychological consultant, Dr. Joseph Dunn, revealed similar scores, except Plaintiff's Full Scale I.Q. score was 69. Although within listing range of 12.05(C) and (D), the ALJ found this score was inconsistent with the record as a whole.[10]

The substantial evidence of record established that Plaintiff was in the borderline intelligence range.  Notwithstanding the low score, Dr. Dunn diagnosed Plaintiff with "borderline intellectual functioning and rule out mild mental retardation."  He expressly noted  with regard to intellectual functioning that Plaintiff appeared capable of carrying out simple instructions; performing routine, repetitive tasks; and, "carrying out or learning to carry out activities of daily living."  In an assessment of Plaintiff's mental capacity, Dr. Dunn found that he a good ability to relate to co-workers and a fair ability to:  follow work rules; deal with the public; use judgement; interact with supervisors; deal with stresses; function independently; maintain concentration and attention; understand, remember and carry out simple job instructions; maintain personal appearance; behave in an emotionally

---

[10]ECF No. 11, pp. 268-269, 307-311.

stable manner; demonstrate reliability; and, predictably relate in social situations.[11]

These findings were consistent with the findings of both Drs. Rowzee and Smith, who concluded that Plaintiff's intellectual functioning was in the low average range. Although Dr. Rowzee opined that Plaintiff's adaptive behavior suggested mild retardation, the ALJ rejected this particular finding. The evidence of record frequently established that he has the ability to maintain employment; obtain a valid driver's license; and, was enrolled in a regular school curriculum, despite failing some classes. Although Plaintiff testified that he no longer plays basketball, he acknowledges that he still visits with friends and family; lives independently; and, attends to his personal needs. An ALJ is free to reject the opinion of any physician, in whole or in part, when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).[12]

Given the evidence as stated, the ALJ concluded that Plaintiff had the residual functional capacity to perform his past relevant work, or a full range of work at all exertional levels subject to the following non-exertional limitations: "he can understand and remember simple instructions and carry out simple tasks. He can interact with supervisors and co-workers on an occasional basis without interruption." In making this determination, the ALJ considered both the objective medical evidence and Plaintiff's

---

[11]ECF No. 11, pp. 251-253; 307-311.

[12]*Id*. at 268-269.

subjective complaints.  The ALJ found that while Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, his statements regarding its intensity, persistence, and limiting effects did not credibly establish that he was precluded from all work activities.  When a claimant's statements concerning the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility.  *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008).  The ALJ's determination is entitled to considerable deference and is supported by substantial evidence here.

Although Plaintiff credibly established that his borderline intelligence and depression were severe mental impairments, the evidence failed to show that he was so functionally impaired by these impairments that he is precluded from engaging in any substantial gainful activity.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  As noted by the ALJ, Plaintiff's depression was well-managed with medication as evidenced by his ability "to maintain a job loading trucks for months without psychological disturbances." He was also able to manage his own finances and was able to live independently and attend to his personal needs.  Further, no examining or consulting physician has ever opined that Plaintiff's depression or intellectual functioning impacts his ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment.  *See Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those

impairments).  The mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that the applicant can work despite being in pain or discomfort, as it does here.  *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that his impairments were of sufficient severity to be disabling.  The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.   For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 10th day of February 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE